F I L E D
United States Court of Appeals
Tenth Circuit

MAR 4 1998

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TIMOTHY LEE TALBOTT,

      Petitioner-Appellant,

v.

JIM FERGUSON, Warden, Wyoming
State Penitentiary; and the WYOMING
ATTORNEY GENERAL,

      Respondent-Appellee.

No. 97-8091
(D.C. No. 96-CV-018B)
(District of Wyoming)

**ORDER AND JUDGMENT**[*]

Before **BALDOCK**, **EBEL** and **MURPHY**, Circuit Judges.

In this appeal of the district court's dismissal of a state prisoner's federal

habeas petition under 28 U.S.C. § 2254 (1994),[1] an inmate at the Wyoming State

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]This habeas petition is governed by the "old" provisions of the habeas statute at 28 U.S.C. § 2254 (1994), i.e., the version prior to its amendment in 1996 by the Antiterrorism and Effective Death Penalty Act (AEDPA), Pub. L. No. 104-332, 110 Stat. 1214 (1996) (codified at 28 U.S.C.A. § 2254), because

(continued...)

Penitentiary challenges his 20- to 30-year sentence for second-degree murder on the grounds that his conviction was obtained through the use of an illegally obtained confession. Because we conclude that the government's references to this confession during its opening statement in the petitioner's state trial do not constitute clear error, we affirm the dismissal of the petition.

I.

Timothy Lee Talbott, petitioner-appellant, was convicted of second-degree murder for the shooting death of his wife, Betty Jo Talbott. See Talbott v. State, 902 P.2d 719, 720 (Wyo. 1995) (affirming Talbott's conviction). Talbott contends that investigators extracted a confession from him during a police station interrogation by improperly relying on statements he had made to police during an interview the day before at a motel. (See R., Doc. #1, "Petition for a Writ of Habeas Corpus," at 6.) Talbott contends that all of these statements were obtained in violation of his right to counsel because Talbott initially told police during his first contact with them -- one day before the police station interrogation -- that he wished to deal with investigators "only" through his

---

[1](...continued)

Talbott's petition was filed four months before the effective date of the AEDPA. See United States v. Kunzman, 125 F.3d 1363, 1364 n.2 (10th Cir. 1997) (footnote circulated en banc). As a result, we hereby grant Talbott a certificate of probable cause for this appeal under 28 U.S.C. § 2253 (1994).

counsel.  (See id.)  Talbott contends that all subsequent questioning by police violated the rule in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981),[2] that absent a clear and unambiguous waiver of the right to counsel, police may not reinitiate questioning once a person has invoked his right to counsel.  (See R., Doc. #1, at 6.)

Prior to Talbott's state trial, the trial court rejected Talbott's motion to suppress the statements he made during his police station interview, ruling that these statements were not fruits of any constitutional violation and could be used in the government's case-in-chief.[3]  See Talbott, 902 P.2d at 721.  However, for reasons that are not apparent in the record, the prosecution did not seek to introduce any evidence of Talbott's incriminating statements during the government's case-in-chief.  See id.  Indeed, when the prosecution sought to

---

[2]In Edwards, the Court held that an accused person, "having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." Edwards v. Arizona, 451 U.S. 477, 484-85 (1981); see also United States v. Giles, 967 F.2d 382, 385 (10th Cir. 1992) ("Once an individual invokes his right to an attorney, all questioning by law enforcement officers must cease until an attorney is present.").

[3]Our record in this appeal is not entirely clear, but it appears that although the state trial court allowed the admission of Talbott's statements from his interrogation at the police station, the court did not allow the statements that Talbott made to police at the motel the day before.  (See R., Doc. #6, at 660-61.) Our record does not indicate the precise legal basis for the trial court's suppression of Talbott's statements at the motel.

admit the evidence during its rebuttal presentation, the trial court refused to allow the evidence on the grounds that it should have been offered during the case-in-chief. (See R., Doc. #6, "Answer," Ex. C., at 664-65.)

The only reference to Talbott's "confession" during Talbott's trial came at the very beginning when, in the government's opening statement, the prosecutor repeatedly stressed that the evidence of the defendant's guilt would be provided by the defendant's own words.[4] See Talbott, 902 P.2d at 721-22. Talbott's

---

[4]Our record does not include a transcript of the prosecutor's opening statement. The report of Talbott's direct appeal, however, provides the following recitation from the prosecutor:

> May it please the Court, Counsel, ladies and gentlemen of the jury. The charge in this case is second degree murder, and the State's evidence will show you that Betty Talbott was murdered by Tim Talbott, her husband -- that man seated right there on the corner -- by his own confession given to law enforcement officers.
>
> He'll describe how about 1:30 in the morning of September 25, 1993, at the parties' home here in Gillette, after an alcohol fueled argument, he held a .25 caliber pistol to Betty Talbott's head and fired a bullet into her brain.
>
> He'll tell you in his confession how after the argument he retrieved the pistol from a closet in their home, how he pressed it to Betty Talbott's forehead to shut her up, as he put it. As he held the pistol there with his finger on the trigger, he will claim that the pistol discharged by accident as he stumbled or staggered, and that it killed his wife.
>
> You'll also learned from that same confession

(continued...)

- 4 -

counsel did not object to these references to Talbott's "confession," and at no time did Talbott's counsel ask for any specific limiting instruction with respect to these comments. See id. at 722. The trial court provided a general limiting instruction before opening statements were given, cautioning jurors that statements by lawyers could not be considered evidence, and this instruction was repeated in the written instructions given to the jury before it retired for deliberations. See id.

Following Talbott's conviction, he filed an appeal with the Wyoming Supreme Court raising three issues, all related to the government's use of Talbott's confession.[5] The court ruled, though, that even if police obtained the

_____

[4](...continued)
>how for the next 12 hours after the shooting the defendant left Betty Talbott's lifeless body seated right where she'd been killed while he drank, made a trip to a liquor store, and tried to decide what to do.
>
>His confession will show you that at last he decided to call his father and claim that Betty had committed suicide.

Talbott, 902 P.2d at 721-22.

[5]The three issues were:
1) The trial court erred in failing to suppress all of Talbott's statements to police because of violations of Miranda and Edwards.
2) The trial court erred in failing to find that the Talbott's statements during the police station interview were fruits of the poisonous tree stemming from the unconstitutional interrogation the day before.
3) The trial court erred in rejecting Talbott's proffered jury instruction on the voluntariness of a confession.

(continued...)

confession in violation of Talbott's right to counsel, he suffered no prejudice from this violation because no evidence of the confession was admitted during the trial. See Talbott, 902 P.2d at 721. The Wyoming Supreme Court then went on to address what it described as the "peripheral" issue of the prosecutor's opening statement.[6] See id. The court held that the prosecutor's comments did not constitute reversible error because the prosecutor had a good-faith belief that the evidence of Talbott's confession was available and admissible and also because any error in the comments was cured by the trial court's instructions to the jury. See id. at 722.

Talbott filed this habeas petition on January 17, 1996, contending that his conviction was "obtained by use of illegally obtained statements (confession), in

---

[5](...continued)
See Talbott, 902 P.2d at 720-21.

[6]The record before us does not indicate why the Wyoming Supreme Court described the question of the prosecutor's opening statement as only "considered peripherally by the appellant in his brief." See Talbott, 902 P.2d at 721. Talbott has not provided us with a copy of his brief in that case, and we cannot determine whether the questions surrounding the prosecutor's opening statement were raised in the context of a federal constitutional claims.

Nevertheless, Talbott's federal habeas petition explicitly asserts only "the three issues which were raised within [the] direct appeal of his conviction." (See R., Doc. #1, at 6(a).) In their answer to Talbott's petition, the respondents concede that "the three issues contained in the petition" were fairly presented to the state courts through Talbott's direct appeal. (See R., Doc. #6, at 2, ¶ 5.) In light of this concession, we need not question whether Talbott has satisfied the requirements of full exhaustion of his federal claims. See Odum v. Boone, 62 F.3d 327, 332 n.2 (10th Cir. 1995) (holding that the exhaustion doctrine in habeas proceedings is not jurisdictional and may be waived by the state).

violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. . . ."[7] (R., Doc. #1, at 6(a).)  The magistrate judge who considered Talbott's habeas petition recommended that the district court dismiss the case on the state's motion under Fed. R. Civ. P. 12(b)(6) because Talbott had failed to show that the prosecutor's remarks "substantially and injuriously effected [sic] or influenced the jury in determining their verdict against petitioner."  (R., Doc. #12, "Report & Recommendation Dismissing Petitioner's Petition for Writ of Habeas Corpus," at 4.)  The district court adopted the magistrate judge's recommendations without revision.  (See R., Doc. #14, "Order Adopting Magistrate's Report & Recommendation.")  Talbott now appeals.

## II.

In this habeas appeal, we must accept the district court's factual findings unless they are clearly erroneous, but we review the district court's legal conclusions de novo.  See Richmond v. Embry, 122 F.3d 866, 870 (10th Cir. 1997), cert. denied, __ S. Ct. __, 1998 WL 70556 (Feb. 23, 1998).  In order to uphold the district court's Rule 12(b)(6) dismissal, we must find that the petitioner can prove no set of facts in support of his claims that would entitle him

---

[7]Talbott's habeas petition states that he intends for his petition to "incorporate all three issues which were raised within [his] direct appeal. . . ." (See R., Doc. #1, at 6(a).)

to relief, accepting the factual allegations in his pleadings as true and construing them in the light most favorable to his claims.  See Summun v. Callaghan, 130 F.3d 906, 913 (10th Cir. 1997).

Talbott's habeas petition asserted three constitutional infirmities in his state conviction, all relating to the legality of the government's conduct in obtaining his confession.  (See R., Doc. #1, at 6(a).)  The magistrate judge recommended rejecting these claims on the grounds that there could be no prejudice from this government conduct, even if it did violate the Constitution, because no evidence of Talbott's confession was introduced during Talbott's trial.  (See R., Doc. #12, at 5.)  Talbott has failed to contradict this finding with any evidence from the record of his trial.  Furthermore, the Wyoming Supreme Court found as a matter of fact that no evidence of Talbott's confession was admitted during Talbott's trial.  See Talbott, 902 P.2d at 721.  This factual finding by the state court is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), and Talbott has failed to overcome that presumption.  See Sena v. New Mexico State Prison, 109 F.3d 652, 655 (10th Cir. 1997) ("Factual determinations by the state court are entitled to a presumption of correctness where those findings are evidenced by a written record and arrived at following a 'full, fair and adequate hearing.'") (quoting 28 U.S.C. § 2254(d)(6)).

Contrary to Talbott's implicit assertion in his habeas petition, a

prosecutor's reference to a confession in an opening statement does not constitute "use" of the confession for purposes of obtaining a conviction at trial.[8]  As the trial court instructed the jury, both orally and in writing, a prosecutor's opening statement is not to be treated as evidence.  See Talbot, 902 P.2d at 722.  The opening statement is useful only in the sense that it provides the jury with a preview of the evidence that later may be "used" for purposes of guilt or innocence.  Only the evidence actually admitted at a trial has been "used" by the jury.

The question of whether the prosecutor's remarks in Talbott's trial were proper, when the prosecutor later failed to introduce the confession, is quite a different matter from whether such comments constituted evidence for the jury, and we make no comment on the propriety of these remarks.[9]  The resolution of

_____

[8]In what may be an attempt to elaborate on this argument, Talbott asserts in his appellate brief that the prosecutor's references to his confession during the government's opening statement transformed the existence of his confession into an element of the crime:  "The State, through the prosecutor, within his opening statement, promised the court and the jury that he would prove the State's case against appellant by showing them appellant's own confession, then chose not to enter this confession into evidence.  Thus, failure to prove all the elements of the crime charged!"  (See Aplt. Br., at 10.)

However, we will not address Talbott's novel -- to say the least -- argument because Talbott failed to raise this contention before the district court.  See Walker v. Mathers, 959 F.2d 894, 896 (10th Cir. 1992) (holding that as a general rule the court will not consider an issue raised on appeal that was not raised below).

[9]Whether the prosecutor's opening remarks in Talbott's trial were proper
(continued...)

Talbott's habeas petition requires only that we determine whether his confession was "used" in his state trial. We have found no indication in our record that the confession was in fact "used" in any evidentiary sense, and thus, the district court did not clearly err in dismissing Talbott's habeas claims. As a result, we AFFIRM the judgment of the district court.

The mandate shall issue forthwith.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge

---

[9](...continued)
involves an analysis of the legal standards for prosecutorial misconduct that Talbott has utterly failed to raise in either his habeas petition or his brief on appeal. See Whitney v. New Mexico, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (holding that although the court must construe a pro se litigant's pleadings liberally, the court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf").