Guido FLAIM, Appellant (Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3924.

Supreme Court of Wyoming.

Aug. 27, 1971.

William H. Jackson, of Jackson & Smith, Rock Springs, for appellant.

James E. Barrett, Atty. Gen., Richard A. Stacy, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Appellant, Guido Flaim, was convicted of second degree arson in connection with the burning of a building owned by him. He was accused of having procured the burning by agreeing to pay Fred Urrutia $100 to burn the building.

Prior to Flaim's trial, Fred Urrutia and his cousin Donald Urutia entered pleas of guilty to first degree arson in connection with the burning of Flaim's building and other buildings. Judgments and sentences had been passed upon them.

Following Flaim's conviction, he made several motions in the trial court seeking relief from the verdict and judgment against him. As far as his appeal is concerned, his attorney has admitted in oral argument that some of the points raised are not sufficient for reversal. The appeal, according to defendant's counsel, is narrowed down to a consideration of the defendant's motion for a new trial and to a

claim of error in the denial of defendant's motion for new trial, as counsel has stated, "especially regarding prejured testimony."

Two assignments of error have been made by appellant in connection with his claim that he should have been granted a new trial. We find no merit in either of them. We will, however, comment briefly on them.

■ *First*, appellant contends Donald Urutia testified falsely at appellant's trial when he testified: "Fred also asked Guido if he had an alibi because we were going to start the fire at 1:30 in the morning." At the hearing on defendant's motion for new trial, Donald Urutia testified: "I did not hear the word 'alibi,' but I heard Guido say he would be home in bed at 1:30 in the morning and I took that for being his alibi."

If a new trial were granted to the defendant, and if Donald testified as indicated at the hearing in connection with defendant's motion for new trial, it does not appear the difference would probably produce a different verdict.[1] Fred Urrutia testified at the trial that he was hired by defendant to burn the defendant's building and that he and Donald Urutia did set the fire. Also, Fred further testified at defendant's trial that he had asked the defendant if he could leave the back door open. When asked what Flaim's response was, Fred testified:

"He says he couldn't because he would be home for an alibi, I imagine."

■ *Second*, appellant contends there was testimony at the hearing on his motion for new trial by Donald Urutia and a witness named Roberts which proved Donald and Fred had fabricated material portions of their trial testimony.

With respect to Roberts, appellant admits his testimony could not be classed as newly discovered evidence. Also that his testimony was unreliable because of the "unsavory background" of the witness.[2] Roberts, in his testimony, claimed Fred Urrutia told him about having some kind of devious deal with the prosecuting attorney's office. Counsel for defendant makes it clear he does not believe any such deal had been made, but he does "believe" Fred Urrutia and Donald Urutia hoped for lenient treatment if they cooperated in the case against Flaim.

Of course counsel's belief is based solely on speculation and guesswork and cannot be made the basis for a new trial. Moreover, the defendant had ample opportunity to develop his theory about why Fred and Donald did what they did, during defendant's trial. His failure to convince the jury on this theory at his trial affords no reason for a new or second trial.

■ With respect to Donald Urutia, defendant's attorney visited with him at the penitentiary. He claims Donald told him things different from what Donald had testified to at Flaim's trial. The attorney reduced the new statement to writing and had Donald sign it. At the hearing on defendant's motion for new trial, Donald testified clear and unequivocally that he was being bothered by the attorney and went along with what the attorney wanted merely to get rid of him. He testified the penitentiary statement (not under oath) was not true.

Counsel for appellant now argues the trial court, at the hearing on defendant's motion, misunderstood what Donald Urutia was saying. To support this, he quotes some of Donald's testimony out of context and claims the witness was saying his statement in the penitentiary was true.

---

1. An application for new trial must be denied when it does not appear the alleged newly discovered evidence would probably produce a different verdict. Kennedy v. State, Wyo., 470 P.2d 372, 374; Opie v. State, Wyo., 422 P.2d 84, 87.

2. In exercising its discretion to grant or deny a new trial, the trial court is not bound to accept testimony as true, even where it is uncontradicted. People v. Rodriguez, 168 Cal.App.2d 452, 336 P.2d 266, 272, cert. den. 361 U.S. 843, 80 S.Ct. 96, 4 L.Ed.2d 82.

Taking the testimony as a whole, we are convinced the trial court did not misunderstand; and that Donald Urutia definitely testified the statement he made in the penitentiary to Flaim's attorney was not true.

Suffice it to say for purposes of our opinion, there is nothing to show that Donald Urutia would testify any differently at a new trial from the way he testified at Flaim's first trial—except for qualifying his use of the word "alibi," as we have heretofore indicated.

Moreover, even if Donald Urutia were to change his testimony and testify as counsel for the defendant hopes he would, the testimony would be suspect for one thing and besides, as we view the entire evidence of the original trial, it would not be sufficiently material to make a different verdict probable.

Appellant's attorney gives recognition to the fact that the disposition of the defendant's motion for new trial rests largely in the trial court's discretion.[3] He also acknowledges that, where a motion based on recanting testimony is refused by the trial court, the supreme court ordinarily will be bound by that decision.[4] As stated in People v. Shilitano, 218 N.Y. 161, 112 N.E. 733, 736:

> "There is no form of proof so unreliable as recanting testimony. * * * Those experienced in the administration of the criminal law know well its untrustworthy character."

We find no plausible reason for believing a new trial for Flaim would produce a result any different from that of his original trial. The district court had good reason to deny his motion for new trial.

Affirmed.

3. Thayer v. United States, 10th Cir., 168 F.2d 247, 250.

4. Espy v. State, 54 Wyo. 291, 92 P.2d 549, 559.