Randy Lynn STAMBAUGH,
Appellant (Defendant),

v.

The STATE of Wyoming, Appellee
(Plaintiff).

No. 5247.

Supreme Court of Wyoming.

July 18, 1980.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Laramie, Michael Schilling, App. Counsel, Wyoming Public Defender, Cheyenne and Mary Elizabeth Galvan, Student Intern, Wyoming Defender Aid, Laramie, for appellant.

John D. Troughton, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Criminal Division, Gay Vanderpoel, Asst. Atty. Gen., and Kenneth E. Stebner, Deputy County Atty., Sheridan County, Sheridan, for appellee.

Before RAPER, C. J, and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

ROONEY, Justice.

Appellant-defendant appeals from a judgment and sentence rendered on a jury verdict which found him guilty of two counts of aggravated assault and battery with a deadly or dangerous weapon in violation of § 6–4–506(b), W.S.1977, of two counts of sexual assault in violation of § 6–4–302(a)(ii), W.S.1977, and of one count of procuring a minor to engage in illicit sexual intrusion in violation of § 14–3–104, W.S.1977. He was sentenced: (1) to not less than 10 years nor more than 14 years on each count of assault and battery with a deadly or dangerous weapon; (2) to not less than 30 years nor more than 50 years for both counts of first degree sexual assault, " * * * said sentence being a consolidated sentence on the two counts. In the event the Supreme Court rules that a consolidated sentence on the two counts is not appropriate, then the Defendant is sentenced to not less than fifteen (15) years and not more than twenty-five (25) years on each of said counts"; and (3) to not less than 4 years nor more than 5 years on the count of procuring a minor child to engage in illicit sexual intrusion, said sentences to run consecutively.

Appellant alleged error: (1) in denying a motion for mistrial made immediately after the prosecuting witness referred to a statement made by appellant that he was going to discuss the incident with his parole offi-

cer and turn himself into the police; (2) in submitting the case to the jury on the charge of procuring a minor child to engage in illicit sexual intrusion under the facts established in the case; and (3) in imposing a single sentence on appellant for violation of the two counts of sexual assault instead of imposing separate sentences for each count.

We affirm.

The prosecuting witness testified that she and her five-year-old daughter spent several hours driving around Sheridan and environs with appellant on July 23, 1979 trying to cash a check received from the sale of some leather goods made by defendant and trying to find the maker of the check. At some point, appellant stopped the car near a cemetery at Big Horn. The prosecuting witness allowed her daughter to leave the car and play outside. She rejected appellant's efforts to embrace her, whereupon he placed a large butcher knife to her face and ordered her to remove her clothes except for her shirt, and to drink a beer. Later and at appellant's command, she called her daughter back to the car. Because the prosecuting witness was crying, appellant struck her in the face. They then drove to another place in the cemetery where appellant again struck her in the face and stabbed her in the upper left thigh. They then drove to the Wagon Box historical site near Story where appellant forced both her and her daughter to perform fellatio on him, and he forced her to perform cunnilingus on her daughter. However, she only pretended to do so. During each of these acts, the knife was on the car seat by appellant. Appellant then struck her again and stabbed her again in the leg near the knee. When another vehicle arrived on the scene, appellant ordered her to put on her clothes. They returned to Sheridan, and appellant allowed her to leave his car upon her assurances that she would not turn him in to the police.

## REFERENCE TO PAROLE STATUS

On direct examination, prosecutrix was allowed to relate the events which occurred immediately after the assault. This lengthy relation ended as follows:

"So, then he brought us to town on the I-90, and as he was bringing us to town he said, 'I'll take you to the hospital to the emergency room,' and I said, 'No, just take us home.' I told him that I would tell my mom that I had ran into a door or I had gotten beaten up for something. He says that he was going to talk to his parole officer and tell him what happened, and after he talked to him he was going to go down to the police station to turn himself in—

"Q. [Prosecuting attorney] Let me hold you up.

"MR. REDLE [defense attorney]: May we approach the bench?

"THE COURT: Yes."

Defense counsel then complained about the reference to parole as showing the appellant to have been convicted previously and to have been in the penitentiary. In response to the court's inquiry as to whether or not he wanted that part of the testimony stricken and the jury instructed to disregard it, defense counsel responded: "I don't know if that would do any good * * it would be better if there were not to be any instruction concerning that particular thing so we don't draw any attention to it." The court denied appellant's motion for a mistrial.

Rule 404(b), W.R.E. provides:

"* * * Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

This rule has been observed to be in substance a statement of long standing Wyoming case law. *Sanville v. State*, Wyo., 593 P.2d 1340 (1979). See *Elliott v. State*, Wyo., 600 P.2d 1044 (1979); *Gabrielson v. State*, Wyo., 510 P.2d 534 (1973).

However, such rule and law is subject to the proposition that improperly admitted evidence is not ground for reversal unless there is actual prejudice to the accused.[1] *Hamill v. State*, Wyo., 602 P.2d 1212 (1979); *Murdock v. State*, Wyo., 351 P.2d 674 (1960); 24B C.J.S. Criminal Law § 1915(17). Such evidence is not actually prejudicial unless there is a reasonable possibility that in the absence of the error the verdict might have been more favorable to the accused. *Nimmo v. State*, Wyo., 603 P.2d 386 (1979); *Reeder v. State*, Wyo., 515 P.2d 969 (1973); *Hoskins v. State*, Wyo., 552 P.2d 342, rehearing denied 553 P.2d 1390 (1976), cert. denied 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977).

In this case, the statement was voluntarily made by a witness who was not familiar with the laws of evidence and who did not make the statement with intent to unfairly prejudice the accused; the statement was not elicited by the prosecution or made as a result of a deliberate action by the prosecution, and, in fact, resulted during an extended relation of events by the witness which relation was not objected to by the accused in an effort to confine the testimony to questions and direct answers; the accused refused an offer by the court to give cautionary instruction in an effort to cure the error; the statement was an oblique reference to prior criminal activity and was not a direct attack on the accused's character or reputation; the statement was not repeated or enlarged upon by the witness or the prosecution; and the evidence of the accused's guilt appears to be overwhelming[2] apart from the statement. See Annotation: "Effect of voluntary statements damaging to accused, not proper subject of testimony, uttered by testifying police or peace officer." 8 A.L.R.2d 1013.

The language of the court, in *United States v. Splain*, 8th Cir. 1976, 545 F.2d 1131, 1133, is appropriate to the facts of this case:

"The general rule is that the Government is precluded from introducing evidence of defendant's other crimes or criminal conduct except in certain circumscribed and well-delineated situations. [Citations.] However, this rule is inapposite to the present case for several reasons. First the Government played no active role and exercised no bad faith in eliciting this information from Hartley. [Citations.] The Government did not attempt to introduce or exploit this evidence for the purpose of reflecting upon Splain's guilt. Second, the passing reference made by Hartley was not patently inculpatory, but was rather innocuous, and could not have had the likely effect of implanting prejudice in the jurors' minds. Third, any improbable taint which could have flowed from this evidence could have been cured by the refused cautionary instruction that the District Court offered to give. [Citations.] Counsel for Splain rejected the instruction and Splain can not now complain that the evidence may have prejudiced the jury. A cautionary instruction here would have erased any possible prejudice. The trial judge can not be faulted for any trial mishaps that he offers to and could correct. Moreover, the evidence of guilt in this case was overwhelming; therefore, there is little likelihood that the jury was affected by the passing comment. [Citations.] *   *   *"

See *Hamill v. State*, supra; *State v. Warden*, Mo.App., 591 S.W.2d 170 (1979); *State v. Nettleton*, 65 Wash.2d 878, 400 P.2d 301 (1965); *United States v. Doby*, 8th Cir. 1979, 598 F.2d 1137; *State v. Johnson*, 60 Wash.2d 12, 371 P.2d 611 (1962).

The error, if any, was harmless, and we do not find that the trial court abused its

---

1. Rule 49(a), W.R.Cr.P. provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

    Rule 7.04, W.R.A.P. provides: "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."

2. Appellant did not present any evidence. The stab wound on the prosecuting witness, injuries from blows to the face, and her hysterical condition were testified to by the ambulance driver and treating physician.

discretion[3] in refusing to grant appellant's motion for a new trial.

## PROPRIETY OF CHARGE UNDER § 14–3–104, W.S.1977

Count V of the information charged appellant with violation of § 14–3–104, W.S. 1977 in that he "did unlawfully procure a five-year-old girl to engage in sexual intrusion." Section 14–3–104, provides:

"Anyone who solicits, procures or knowingly encourages anyone under the age of sixteen (16) years to engage in illicit sexual penetration or sexual intrusion as defined in W.S. § 6–4–203 [sic] is guilty of a felony, and upon conviction shall be imprisoned for a term not more than five (5) years."

Appellant contends that § 14–3–104 is designed to protect minors from being used in prostitution and not to encompass situations where two unwilling partners, one of whom is a minor, are forced by a third party to engage in a sexual act. He argues that the word "procure" requires a connotation of prostitution, and that the legislature intended § 14–3–104 to apply only to situations involving prostitution. Of course, this case did not involve a prostitution situation. Appellant supports his contention by pointing to the definition of "procure" in Webster's Third New International Dictionary as "to get possession of (women) and make available for promiscuous sexual intercourse (as in a house of prostitution)."

"Procure" has that meaning,[4] but the same dictionary sets forth as additional meanings of the word: "to cause to happen or be done, bring about" and "to prevail upon to do something indicated."

In construing a statute, its words must be given plain meanings, *Jahn v. Burns*, Wyo., 593 P.2d 828 (1979); *Belco Petroleum Corporation v. State Board of Equalization*, Wyo., 587 P.2d 204 (1978), in the absence of clear statutory provisions to the contrary, *Sanchez v. State*, Wyo., 567 P.2d 270 (1977); *Kennedy v. State*, Wyo., 559 P.2d 1014 (1977).

There is no indication in the language of the statute that the legislature intended to restrict the word "procure" to any one of its meanings. The statute is designed and intended to prohibit one who "solicits, procures or knowingly encourages" one under 16 years of age to engage in the illicit sexual activity set forth in the statute.[5] The jury found that appellant did "procure" and "knowingly encourage" prosecutrix's daughter to do so. The evidence was sufficient to present the facts to the jury for the purpose of making this determination. It was not error for the court to overrule appellant's motion to dismiss Count V for failure to prove the elements of § 14–3–104.

## SENTENCES

Appellant contends that the sentence imposed for the two counts of sexual assault was improper in that the trial court lacked authority to impose a general or consolidated sentence. He contends that the alternate sentence imposed in event the consolidated sentences were found improper by this court, is ambiguous as to whether it should run consecutively or concurrently.[6]

---

3. Disposition of a motion for a new trial is in the trial court's discretion. *Flaim v. State*, Wyo., 488 P.2d 153 (1971); *Daellenbach v. State*, Wyo., 562 P.2d 679 (1977).

4. Even such meaning could be said to apply to the facts of this case.

5. Appellant seems to argue that § 14–3–104 concerns only those instances in which "persuasion" is used to obtain the participation in the illicit actions. Even if such interpretation were accepted, "persuasion' often consists of force. Force is commonly employed in the "procuring" of prostitutes.

6. The following language was used by the trial court in imposing sentence in open court on December 3, 1979, with respect to the sentence on these two counts:

"On Count III, that of first degree sexual assault, and Count IV, sexual assault in the first degree, as I read that statute on sentencing and particularly a recent decision of the Wyoming Supreme Court entitled *Hamill v. State*, Case No. 5135, [602 P.2d 1212] which the slip opinion was dated the 16th day of November, 1979, it seems to say at footnote number two, that only one sentence is to be imposed under the circumstances of this par-

Section 6–4–306, W.S.1977, under which the sentence was imposed reads in pertinent part:

"(a) A person convicted of sexual assault who does not qualify under the criteria of subsection (b) of this section shall be punished as follows:

"(i) For sexual assault in the first degree, imprisonment for not less than five (5) nor more than fifty (50) years;

"(ii) For sexual assault in the second degree, imprisonment for not less than one (1) nor more than twenty (20) years;

\* \* \* \* \* \*

"(b) A person who is convicted of sexual assault shall be punished by the extended terms of subsection (c) of this section if:

"(i) He is being sentenced for two (2) or more separate acts of sexual assault in the first or second degree;

"(ii) He previously has been convicted of any crime containing the same or similar elements as a crime pursuant to W.S. 6–63.2 [§ 6–4–302] or 6–63.3 [§ 6–4–303].

"(c) Whenever any of the circumstances set out in subsection (b) of this section exist, the court shall impose sentence as follows:

"(i) For sexual assault in the first or second degrees, imprisonment for not less than five (5) years nor more than life;

\* \* \* \* \* \*"

The language of this section does not reflect the intention of the legislature to direct imposition of a general or consolidated sentence, rather it reflects the intention to establish minimum and maximum incarceration limits under designated conditions and to enact a form of a habitual criminal act.[7]

Paraphrasing that portion of the section pertinent hereto, it provides that sentence of "imprisonment for not less than five (5) years nor more than life" shall be imposed upon conviction of a person for sexual assault in the first degree or for sexual assault in the second degree if "he is being sentenced for two (2) or more separate acts of sexual assault in the first or second degree" or "if he previously has been convicted of any crime having the same or similar elements as" sexual assault in the first degree or sexual assault in the second degree.

Subsection (b) of the section refers to the punishment to be for conviction of "sexual assault," not the plural, "assaults." The intention is thereby expressed to apply the punishment for each "assault" rather than for a plurality of such assaults. The same intention is expressed by use of the word "assault," not "assaults," in subsection (c) in which the language is " \* \* \* the court shall impose sentence as follows: (i) For sexual *assault* \* \* \*." (Emphasis supplied.)

■ The overall legislative intention with reference to the penalties set forth in

---

ticular case. That is, two or more first degree sexual assaults were charged when they occurred at different times.

"That being the case then, the sentence on those two charges, that is those two counts, being Count III and Count IV, you are hereby sentenced to a period from 30 to 50 years in the Wyoming State Penitentiary. That sentence is to run consecutively from the other two sentences.

"Now, if the Supreme Court determines that there should be one sentence on each count rather than the consolidated sentences, the sentence on each of those counts shall be 15 to 25 years, and the sentence is to run consecutively."

The Judgment and Sentence filed for record on December 5, 1979 provides in this respect:

"COUNT III and COUNT IV:
Sexual assault in the first degree, violations of Wyoming Statute Section 6-4-302(a)(ii),

for the period of not less than thirty (30) years and not more than fifty (50) years, said sentence being a consolidated sentence on the two counts. "In the event the Supreme Court rules that a consolidated sentence on the two counts.

"In the event the Supreme Court rules that a consolidated sentence on the two counts is not appropriate, then the Defendant is sentenced to not less than fifteen (15) years and not more than twenty-five (25) years on each of said counts"

Then after reciting the sentence for Count V, it provides: "All of said sentences to run consecutively \* \* \*."

7. The habitual criminal aspect is contained in subsection (b)(ii) and is not pertinent to this case.

§ 6–4–306 was to provide for an enhancement of the penalty for a repeated crime and for a second conviction.[8] It was not for the purpose of mandating a general or consolidated sentence. In the next previous section of this opinion, we cited authority for the proposition that words must be given plain meanings in construing a statute in absence of clear statutory provisions to the contrary.

■■ The punishment for crime is within the province of the legislature. *Chavez v. State*, Wyo., 604 P.2d 1341 (1979); *Sorenson v. State*, Wyo., 604 P.2d 1031 (1979). It is not our function to usurp the power of the legislature or attempt to rewrite any statute. *Oroz v. Hayes*, Wyo., 598 P.2d 432 (1979); *State ex rel. Albany County Weed and Pest District v. Board of County Commissioners of County of Albany*, Wyo., 592 P.2d 1154 (1979). In subsection (b)(i) of § 6–4–306, the legislature sets forth a condition which requires imposition of sentence for each assault within the limits set forth in subsection (c) of that section.

Inasmuch as § 6–4–306 does not pertain to a general or consolidated sentence, we need not address the effect or propriety of such sentences except to note that our holding is in keeping with the preference of the majority of the courts for individual sentences for multiple offenses in criminal cases. 24 C.J.S. Criminal Law § 1567(4); *Neely v. U. S.*, 4th Cir. 1924, 2 F.2d 849; Annotation: "Propriety of general sentence covering several counts in information or indictment not exceeding in aggregate the sentences which might have been imposed cumulatively under the several counts," 91 A.L.R.2d 511.[9]

■ The trial judge treated the 30 to 50 year sentence under these two counts as a general or consolidated sentence.[10] He stated that the sentence was "a consolidated sentence on the two counts." But he then imposed an alternative sentence of not less than 15 years and not more than 25 years on each of the counts "in the event the Supreme Court rules that a consolidated sentence on the two counts is not appropriate." We do so rule. The consolidated part of the sentence was inappropriate because the trial court felt that it was mandated to make a consolidated sentence.[11] Since there was no such mandate, the purpose for it fails and it becomes "inappropriate." Under such circumstances, is the second alternative of the judgment and sentence viable and the first alternative mere surplusage which we can order removed or severed from the judgment? We answer in the affirmative and hold that the general or consolidated sentence of the trial court on Counts III and IV of the judgment and sentence requiring imprisonment of from 30 to 50 years to be of no force or effect and that the separate sentences of 15 to 25 years on each of the two counts to be proper and effective. *Sorenson v. State*, supra; 24 C.J.S. Criminal Law § 1586.

The remaining issue, then, is whether or not these two separate sentences are to be

---

**8.** The second conviction aspect is contained in subsection (b)(ii) and is not pertinent to this case.

**9.** Appellant acknowledges that the majority of jurisdictions find proper a general sentence for convictions on several counts of a multi-count indictment or information as long as the general sentence does not exceed the aggregate of the permissible sentences on the counts, but he points out that such practice is strongly discouraged in such jurisdictions, and he urges us to join a minority of jurisdictions in rejecting the practice completely. See Annot. 91 A.L.R.2d 511, supra.

**10.** See footnote 1.

**11.** The trial court treated footnote 2 to our opinion in *Hamill v. State*, supra, as direction to impose a general or consolidated sentence under § 6–4–306, W.S.1977. That footnote reads:

"Pursuant to § 6–4–306(b) and (c), W.S.1977, the district court imposed only one extended sentence for the multiple convictions, 20–45 years in the Wyoming State Penitentiary, a sentence of not less than five (5) years nor more than life being authorized where two (2) or more separate acts of sexual assault in the first or second degree are committed." 602 P.2d at 1213.

However, the issue of whether or not a general or consolidated sentence was mandated under § 6–4–306 was not raised on appeal of the *Hamill* case, and we were not called upon to review its propriety in that case.

served concurrently or consecutively. Appellant contends that there is ambiguity in the sentence in this respect. He points to the judgment and sentence entered into the record on December 5, 1979 and to the fact that the consecutive or concurrent nature of the sentences was not set forth until after listing the sentences for each of the 5 counts upon which he was convicted, at which time the document provides: "All of said sentences to run consecutively * *." We do not find that language to be ambiguous. Furthermore, the sentence imposed in open court on December 3, 1979 was plain and specific in providing that the separate sentences of 15 to 25 years on each of Counts III and IV " is to run consecutively." [12]

In summary, we find that appellant was sentenced to not less than 10 years and not more than 14 years on Count I, to not less than 10 years and not more than 14 years on Count II, to not less than 15 years and not more than 25 years on Count III, to not less than 15 years and not more than 25 years on Count IV, and to not less than 4 years and not more than 5 years on Count V, with all of the sentences to run consecutively; and, as so sentenced, we affirm.

---

12. See footnote 6.